NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOSEPH C. DELLOSA,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

_____

2012-7160

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-1891, Judge Robert N. Davis.

_____

Decided: September 11, 2013

_____

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

ALEX P. HONTOS, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and LARA K. EILHARDT, Attorney, United States Department of Veterans Affairs, of Washington, DC.

―――――――――

Before NEWMAN, REYNA, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* TARANTO.

Dissenting opinion filed by *Circuit Judge* REYNA.

TARANTO, *Circuit Judge.*

Joseph Dellosa, a veteran of the United States Navy, seeks a medical examination from the Department of Veterans Affairs in conjunction with his claim for service-connected disability benefits. Both the Board of Veterans' Appeals and the Court of Appeals for Veterans Claims determined that Mr. Dellosa was not entitled to a VA medical examination and denied his benefits claim on the merits. We conclude that the Veterans Court, like the Board, may well have applied an incorrect legal standard under the statute that provides for medical examinations in specified circumstances as part of the VA's duty to assist a claimant, 38 U.S.C. § 5103A(d)(2). We vacate the Veterans Court decision and remand for reconsideration using the correct standard.

## BACKGROUND

Mr. Dellosa served in the Navy for a few months in 1984 before being discharged for failing to "adapt to the naval environment." In April 2006, he filed a claim for benefits based on an allegation of disability caused by service-connected depression. He contended that he had been "exposed to a lot of traumatic events as a recruit" and experienced symptoms like "intense fear, helplessness, and . . . insomnia" as a result. The regional office denied his claim in December 2006. When he appealed to the Board, he specified that he was relying on bipolar disorder.

The Board held a hearing in November 2010. Mr. Dellosa testified that problems with his bipolar disorder began in basic training, and he gave examples. He asserted that his bipolar disorder was related to his Navy

service because he had been "br[o]k[en] down," which "brought up anger and hostility . . . that [he] never thought [he] had," and he "came out as a different . . . person," with his life "turned . . . upside down."

In February 2011, the Board issued a decision finding that the Secretary's duty to assist had been satisfied and that Mr. Dellosa had failed to establish an entitlement to benefits on the merits. As part of the duty-to-assist analysis, the Board considered whether it was appropriate to have denied Mr. Dellosa a medical examination under 38 U.S.C. § 5103A(d). The Board stated that an examination is proper only when, among other things, there is "an indication that the current disability may be related to" in-service events, and it found "no competent evidence of record to support a finding that the Veteran's bipolar disorder is related to service." The Board explained that, although Mr. Dellosa had "provided statements that his bipolar disorder is related to service," "the record is silent for a nexus between [his] current disabilities and his active service" because "he is not competent to provide evidence of a diagnosis or etiology of a condition." On the merits, the Board held that "the preponderance of the evidence [wa]s against the claim for service connection for a bipolar disorder disability."

The Veterans Court affirmed. With respect to Mr. Dellosa's request for a medical examination, the court found no error in the Board's determination that 38 U.S.C. § 5103A(d)(2)(B) "was not met." The Veterans Court repeated the Board's finding that "'the record is silent for a nexus between [Mr. Dellosa's] current disabilities and his active service,'" while also acknowledging that there were "symptoms Mr. Dellosa state[d] he experienced in service and . . . ascribe[d] to his later-diagnosed bipolar disorder." Mr. Dellosa appeals, arguing that the denial of a VA medical examination was based on a misinterpretation of 38 U.S.C. § 5103A(d).

DISCUSSION

A pair of 2010 decisions—*Waters v. Shinseki*, 601 F.3d 1274 (Fed. Cir. 2010), and *Colantonio v. Shinseki*, 606 F.3d 1378 (Fed. Cir. 2010)—explain the proper inquiry for determining whether a veteran is entitled to a medical examination under 38 U.S.C. § 5103A(d)(2) and guide our analysis here. After confirming our jurisdiction, we conclude that the Veterans Court may well have held Mr. Dellosa to an improperly high standard (in adopting the Board's analysis). We therefore vacate and remand.

A

Our jurisdiction is limited by statute but includes review of "any interpretation" of "any statute or regulation" that was relied on in the decision on appeal. 38 U.S.C. § 7292(a). Under that authority, we have explained that whether the Veterans Court misinterpreted the governing statutory provisions is within our jurisdiction to review. *Waters*, 601 F.3d at 1276. That is so even though we have characterized the inquiry under 38 U.S.C. § 5103A(d)(2) as factual after rejecting any allegation of legal error in the standard that was applied. *See, e.g., DeLaRosa v. Peake*, 515 F.3d 1319, 1322 (Fed. Cir. 2008); *Wells v. Principi*, 326 F.3d 1381, 1384 (Fed. Cir. 2003). At oral argument, the government recognized our jurisdiction to decide if the Veterans Court misinterpreted section 5103A(d)(2):

> THE COURT: [W]e don't lack jurisdiction here any more than we did in *Waters* or *Colantonio* to say that when the Board uses the term "competent evidence," which is a term in the first requirement and it's not a term in the second requirement, that it may well have confused what's required for the second element.
>
> A: Certainly, if the extent of Mr. Dellosa's argument is simply that the law was misinterpreted—and that's it—when it comes to 5103A(d)(2), that's a legal question. That the court can review.

Oral Argument at 13:52-14:49.

B

The duty-to-assist statute, 38 U.S.C. § 5103A(d)(2), provides:

> The Secretary shall treat an examination or opinion as being necessary to make a decision on a claim . . . if the evidence of record before the Secretary, taking into consideration all information and lay or medical evidence (including statements of the claimant)—
>
> (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and
>
> (B) indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; but
>
> (C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim.

We have held that subparagraphs A and B, because of their different language, set different evidentiary standards: "competent" evidence is needed under A, but "medically competent evidence is not required in every case to 'indicate' that the claimant's disability [or symptoms] 'may be associated' with the claimant's service" under subparagraph B. *Colantonio*, 606 F.3d at 1382; *see also Waters*, 601 F.3d at 1277.

Based on that difference, we identified an apparent erroneous interpretation of section 5103A(d)(2) in both *Waters* and *Colantonio*. In *Waters*, we concluded that the Board's findings of "'no competent evidence of a nexus'" and "'no competent medical evidence or record' showing the necessary nexus" "appeared to use the evidentiary standard in subsection A in applying subsection B[,] thus subjecting the veteran to a more onerous standard of proof than the statute provides." 601 F.3d at 1277. But

we held that the error was harmless because we interpreted the Veterans Court to have found that the veteran's own "conclusory statements regarding causation were insufficient" to meet subparagraph (d)(2)(B). *Id.* at 1277-79.

In *Colantonio*, we reviewed statements from the Veterans Court that "lay testimony 'cannot provide the requisite medical nexus between service and the appellant's current back disability,' and that a lay person 'is not competent to opine on matters requiring medical knowledge such as etiology of a condition or nexus.'" 606 F.3d at 1381. We determined that those assertions could "be interpreted as meaning that a veteran's lay testimony can never be sufficient in itself to satisfy the nexus requirement in section 5103A(d)(2)(B)," which would be incorrect. *Id.* at 1381-82. Because the Veterans Court "may have overstated the extent to which competent medical evidence is required to make the minimal showing of nexus required by subparagraph B," we vacated and remanded for reconsideration "in light of the proper interpretation of section 5103A(d)(2)." *Id.* at 1382.

We reach the same conclusion and follow the same course here that we did in *Colantonio*. The Board acknowledged Mr. Dellosa's "statements that his bipolar disorder is related to service" but held that there was "no competent evidence of record" to support such a finding under section 5103A(d)(2)(B). Because Mr. Dellosa "is not competent to provide evidence of a diagnosis or etiology of a condition," the Board explained, the record was "silent" on the subparagraph B question. The Veterans Court similarly acknowledged Mr. Dellosa's testimony, but repeated the Board's finding of a "silent" record in affirming the Board's (d)(2)(B) determination.

Those decisions "can be interpreted as" resting on "a rule requiring medically competent evidence" under subparagraph B. *Colantonio*, 606 F.3d at 1382. Neither decision labels Mr. Dellosa's testimony that "his bipolar disorder is related to service" as conclusory. By finding

that those lay statements say *nothing* about the required connection to service under subparagraph B simply because Mr. Dellosa "is not competent" to provide medical testimony, the Board appears to have misinterpreted the relevant standard. The Veterans Court did not identify error in the Board's analysis or ask whether it was harmless, *Waters*, 601 F.3d at 1277-79; on the contrary, the court reaffirmed the Board's conclusion. In these circumstances, a remand for reconsideration is warranted to be certain that Mr. Dellosa is not held to "a more onerous standard of proof than the statute provides." *Id.* at 1277.

Our conclusion is not altered by the fact that Mr. Dellosa's lay testimony was later assessed on the merits of the service-connection question and found, in the absence of a VA medical examination, to be "outweighed" by other evidence "showing no relationship between the Veteran's current bipolar disorder and service." The duty-to-assist statute allows for medical examinations in order to help with the merits decision, and the merits analysis conceivably could be altered by the results of a VA medical examination. Moreover, a finding that Mr. Dellosa's testimony was "outweighed" by other evidence is not the same as a finding that his testimony was entitled to no weight and that the record was thus "'devoid of any evidence'" on the (d)(2)(B) issue. *Waters*, 601 F.3d at 1277. How the medical examination question is decided under the correct standard is not for us to say.

## CONCLUSION

We vacate the Veterans Court's decision and remand for application of the correct statutory standard.

### VACATED AND REMANDED

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOSEPH C. DELLOSA,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7160

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-1891, Judge Robert N. Davis.

---

REYNA, *Circuit Judge*, dissenting.

The majority finds subject matter jurisdiction over this appeal based on an apparent concession from the government where it "recognized our jurisdiction" at oral argument. I disagree on this informal granting of jurisdiction. It is well recognized that "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant . . . ." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982); *see also Cromer v. Nicholson*, 455 F.3d 1346, 1348 (Fed. Cir. 2006) (recognizing that even if neither party disputes this court's subject matter jurisdiction under 38 U.S.C. § 7292, we are obligated to consider the issue *sua sponte* if there is reason to doubt that jurisdiction exists). A more searching review of our

jurisdiction is required and, once performed, I conclude that we lack jurisdiction to decide Mr. Dellosa's appeal. Accordingly, I respectfully *dissent*.

This court has held that the Board of Veterans' Appeals' ("Board") determination regarding the necessity of a medical examination is a question of fact, beyond the jurisdiction of this court to review. *See DeLaRosa v. Peake*, 515 F.3d 1319, 1322 (Fed. Cir. 2008). The majority recognizes as much. Maj. Op. 4. Yet the majority recasts the Board's factual finding regarding the necessity of a medical examination as an apparent misinterpretation of the legal standard undergirding subparagraph B of 38 U.S.C. § 5103A(d)(2). In doing so, the majority suggests that the Board misapplied our holdings in *Waters v. Shinseki*, 601 F.3d 1274 (Fed. Cir. 2010), and *Colantonio v. Shinseki*, 606 F.3d 1378 (Fed. Cir. 2010), when the Board rejected Mr. Dellosa's lay evidence as not competent to indicate that his disability was associated with his active military service. *See* § 5103A(d)(2)(B).

I do not agree that the Board categorically rejected Mr. Dellosa's lay evidence or held him to "a more onerous standard of proof than the statute provides." *Waters*, 601 F.3d at 1277. Rather, "[t]he decision here on appeal indicates that the Board did consider the lay evidence." *Dellosa v. Shinseki*, No. 11-1891, 2012 U.S. App. Vet. Claims LEXIS 994, at *2 (Vet. App. May 15, 2012). The Board acknowledged Mr. Dellosa's lay evidence supporting his assertion that he suffered from his disability in-service, but found the record devoid of any complaints, diagnoses, or treatment of bipolar disorder.[1] The record,

---

[1]    The Board was correct in its observation that laypersons generally are not competent to provide evidence of a diagnosis or etiology. *See Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

therefore, was silent regarding a nexus between Mr. Dellosa's disability and his military service.

The Board did not suggest that lay statements can never be sufficient to satisfy the nexus requirement of § 5103A(d)(2)(B), or that competent medical evidence is required for that subparagraph. *Cf. Waters*, 601 F.3d at 1277; *Colantonio*, 606 F.3d 1378 (noting the impropriety of a decision holding that competent medical evidence is necessarily required to establish a nexus between service and a later disability). Rather, the Board's citation to *Waters* indicates that it rejected Mr. Dellosa's evidence as a conclusory lay statement insufficient to trigger the Department of Veterans Affairs' duty to provide a medical examination. At bottom, the Board's conclusion that the evidence did not warrant a medical examination was a factual finding beyond our jurisdiction. *DeLaRosa*, 515 F.3d at 1322. Even its conclusion that the lay evidence was neither competent nor sufficient is a fact issue that we cannot review. *Jandreau*, 492 F.3d at 1377; *see also Waters*, 601 F.3d at 1278 ("The Department must consider lay evidence, but may give it whatever weight it concludes the evidence is entitled to.").

The majority relies heavily on the fact that the Board discussed the evidence supporting an examination before considering the evidence regarding service connection, implying that the lay evidence was considered for the latter analysis, but not the former. The Board's discussion of the lay evidence, however, pertained to both analyses. Joint App'x 51 ("[A]*s discussed below*, the evidence of record does not warrant [an examination]."). In fact, the Board acknowledged that "[l]ay testimony is competent . . . to establish the presence of observable symptomatology and 'may provide sufficient support for a claim of service connection.'" *Id.* at 55. Nonetheless, the Board concluded that Mr. Dellosa's contentions were outweighed by the medical evidence of record that did not show a relationship between Mr. Dellosa's disability and service.

This type of weighing of the evidence is beyond our jurisdictional reach.

As was true in *Waters*, the Board's reference to "competent" evidence relating to the nexus requirement was unfortunate and ill-advised. 601 F.3d at 1277. The Board should have said that the record before it did not indicate that Mr. Dellosa's current disabilities had a causal connection or were associated with his active military service. *Id.* The majority reverses on this minor technicality notwithstanding that the Board applied the proper legal standard and reached a factual determination that an examination was not required. I do not believe that our jurisdiction changes on such nuances. It is for this reason that I depart from the majority and conclude that we lack jurisdiction to decide this case.

At this point, I find it important to reiterate our observation from *Waters* that a conclusory generalized statement regarding the nexus between a disability and service is not enough to entitle a veteran to a medical examination under § 5103A(d)(2)(B). *Id.* at 1278. "Since all veterans could make such a statement, this theory would eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations as a matter of course in virtually every veteran's disability case." *Id.* The Board found that Mr. Dellosa was not entitled to an examination because his conclusory statements regarding nexus were outweighed by other record evidence. We are limited by our standard of review to upset this finding. From the majority's willingness to do so by discerning a legal error where none exists, I respectfully *dissent*.