Citation Nr: 1714094 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 11-26 129 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for depression.

2. Entitlement to service connection for an unspecified hip disability.

3. Entitlement to service connection for a right knee disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

N.S. Pettine, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1990 to February 1994 and from August 1995 to December 1995.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In June 2009, prior to certification of the appeal in July 2015, the Veteran withdrew her appeals as to entitlement to service connection for PTSD and unspecified osteoarthritis. Accordingly, those issues are not before the Board.

In September 2016, the Board remanded the case so that a hearing could be scheduled for the Veteran. In December 2016, the Veteran testified at a video conference hearing before the undersigned. A transcript of the hearing is of record.

The Board acknowledges that in a September 2011 statement, the Veteran referred to entitlement to service connection for a left knee disability. The Board also notes that a prior claim for service connection for a left knee disability was denied via a May 1994 rating decision. The May 1994 rating decision was not appealed. Effective March 24, 2015, a claim for benefits must be submitted on the application form prescribed by the Secretary. See 38 C.F.R. §§ 3.1(p), 3.155, 3.160 (2016). In light of the Veteran's contentions, the Board requests that the Agency of Original Jurisdiction (AOJ) contact the Veteran and her representative and provide them with the appropriate form regarding reopening a previously denied claim for service connection for a left knee disability.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Although the Board regrets the additional delay, further development is required prior to the adjudication of all of the Veteran's pending issues.

Entitlement to Service Connection for Depression

Regarding the Veteran's claim for service connection for depression, during the course of the appeal, the Veteran was not afforded a VA examination. A pair of 2010 decisions-Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010), and Colantonio v. Shinseki, 606 F.3d 1378 (Fed. Cir. 2010)-explain the proper inquiry for determining whether a veteran is entitled to a medical examination under 38 U.S.C. § 5103A(d)(2). The Secretary shall treat an examination or opinion as being necessary to make a decision on a claim if the evidence of record before the Secretary, taking into consideration all information and lay or medical evidence, (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and (B) indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; but (C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim. Part (A) requires competent medical evidence, but part (B) may be satisfied by lay evidence, even if that evidence is outweighed by more probative evidence against a nexus.

Applying the above three-part test, June 2008 and June 2011 VA treatment records contain diagnoses of depression. Accordingly, there is competent evidence that the Veteran has a current disability.

Next, during the December 2016 hearing, the Veteran testified that she first began feeling depressed right after she was assigned to her first duty station. See Tr. at 3. The Veteran explained that she felt depressed due to her young age and not having any friends, and that she felt alone and isolated as this was the first time she was ever away from home for an extended period of time. Id. at 3-7. Additionally, the Veteran also stated that within her in-service duties as a medical laboratory scientist, she could be in an on-call position for an emergency room, where she would have to respond to calls late at night. Id. at 10. The Veteran recounted seeing individuals treated for gunshot wounds and suicide attempts. Id. The Veteran concluded that she has always felt depressed since service to the present time. Id. at 7. 

Included within the Veteran's service treatment records (STRs), is a record from a mental health clinic dated October 1991. In that STR, although the clinician opined that the Veteran's mental status was essentially within normal limits, the Veteran reported problems and frustrations with her work. As such, the Board acknowledges that there is an indication that the Veteran's symptoms may be associated with her active duty service.

As the record currently lacks sufficient medical evidence discussing a causal connection between the Veteran's present depression and her active duty service, the Board cannot make a proper decision as to the merits of the Veteran's claim at this time. Therefore, the Board will remand this issue so that the Veteran may be afforded an examination so that sufficient medical nexus evidence may be obtained.

Entitlement to Service Connection for a Right Knee Disability

During the December 2016 hearing, the Veteran and her representative indicated that the Veteran has not presently been diagnosed with a right knee disability. Tr. at 20. However, the Veteran indicated that around February or March 2015, she received treatment for her right knee from a private clinician.

At the present time, these private treatment records are not associated with the claims file. Accordingly, prior to the adjudication of this issue, the Veteran should be given an opportunity to identify-and the AOJ should attempt to obtain-these outstanding private treatments records. See 38 C.F.R. § 3.159(c)(1).

Additionally, the Veteran has not yet been afforded an examination in connection for her claim for service connection for a right knee disability. Although the Veteran presently has not been diagnosed with a right knee disability, during the December 2016 hearing, she testified as to persistent or recurrent symptoms affecting her right knee-i.e. constant pain in her right knee, particularly when sitting down, getting out of a chair, going up and down stairs, and sometimes walking. See Tr. at 20-23. Additionally, while it appears from that right knee treatment was not noted in the Veteran's STRs, during the December 2016 hearing, the Veteran stated she hyperextended it during a workout at a weight room. Id. at 16.

The Board is cognizant that the Veteran's STRs contain treatment for a hyperextended left knee in May 1993 as well as treatment for a right ankle injury in October 1990 following an accident in a weight room. As such, it appears that the Veteran may have misremembered incidents from her active duty service. However, at this time, the Board is presently not making an ultimate decision as to the Veteran's credibility.

Rather, for the limited purpose of determining whether a VA examination should be obtained, the Board may consider lay evidence that is indicative that a disability or symptoms could be associated with service. See Waters, 601 F.3d 1274, Colantonio, 606 F.3d 1378. As the Veteran recounted an injury to her right knee in service and described recurring symptoms since service at the December 2016 hearing, the Board finds that the Veteran must be afforded an examination to determine the existence and etiology of any right knee condition.

Entitlement to Service Connection for an Unspecified Hip Disability

During the December 2016 hearing, the Veteran discussed pain in her right hip. Tr. at 15. The Veteran provided testimony that her claim for service connection for her hip could be granted on a direct or secondary basis. Id. at 15, 19. Specifically, the Veteran recalled an incident in service where she fell while walking up the stairs in a dormitory and landed on her right hip after her right knee gave out. Id. at 19. Comparatively, the Veteran also stated that she presently has pain in her right hip that feels like it originates from her right knee. Id. at 15, 19.

Similar to her claim for service connection for a right knee disability, the Veteran has not been afforded a VA examination in connection for claim regarding her hip. Due to the Veteran's testimony during the December 2016 hearing as well as this claim's connectivity to the Veteran's right knee claim, the Board finds that the Veteran must also be afforded an examination to determine the existence and etiology of any hip disability on remand.

Lastly, given the need to remand the foregoing issues for the potential obtainment of private treatment records as well as the scheduling of VA examinations, any outstanding VA treatment records should also be obtained.

Accordingly, the case is REMANDED for the following action:

1. Obtain updated VA treatment records and associate them with the claims file. If no such records exist, the claims file should be annotated to reflect as such and the Veteran notified as such.

2. Ask the Veteran to identify and authorize VA to obtain any outstanding private treatment records, particularly those from a yet named private clinician mentioned during the December 2016 hearing. After obtaining any necessary authorization forms from the Veteran, obtain any pertinent records identified and associate them with the claims file. Any negative responses should be in writing and should be associated with the claims file.

3. After completing the above to the extent possible, schedule the Veteran for a VA examination to determine the etiology of her depression. All necessary tests and studies should be conducted and all clinical findings reported in detail. The entire claims file should be made available to and be reviewed by the examiner in conjunction with this request. 

Following review of the claims file and examination of the Veteran, the clinician should state whether it is at least as likely as not (50 percent probability or more) that the Veteran's depression had its onset in service or is otherwise related to service.

In offering any opinion, the clinician should consider medical and lay evidence dated both prior to and since the filing of the claim, including:

* The Veteran's testimony during the December 2016 hearing;

* The contentions made by the Veteran's representative in an August 2016 statement;

* The Veteran's September 2011 statement describing the events she experienced in her job in service;

* June 2011 and June 2008 VA treatment records diagnosing the Veteran with depression;

* A January 2011 VA Mental Health Psychosocial Assessment contained within the Veteran's VA treatment records;

* The Veteran's July 2008 statement describing stressful working conditions in service; 

* Records dated May 2001 to July 2004 from Harris County Hospital District treating the Veteran for depression; and

* An October 1991 STR where the Veteran reported to a mental health clinic for occupational problems.

In determining whether the Veteran meets the criteria for a current psychiatric diagnosis, please note that although the Veteran may not meet the criteria for a psychiatric diagnosis at the present time, diagnoses made prior to and since the date of claim filing meet the criteria for a "current" diagnosis. Please also note that the Veteran is competent to report symptoms, treatment, and injuries, and that her reports must be taken into account in formulating the requested opinion.

A complete rationale for the opinions rendered must be provided. If the clinician cannot provide the requested opinion without resorting to speculation, he or she should please expressly indicate this and provide a supporting rationale as to why that is so.

4. After completing steps (1) and (2) to the extent possible, schedule the Veteran for a VA examination to determine the existence and etiology of any right knee or right hip conditions. All necessary tests and studies should be conducted and all clinical findings reported in detail. The entire claims file should be made available to and be reviewed by the examiner in conjunction with this request.

Following review of the claims file and examination of the Veteran, the clinician should address the following:

(a) Please identify any right knee disability by medical diagnosis.

(b) For each right knee disability identified, please state whether it is at least as likely as not (50 percent probability or more) that the right knee disability had its onset in service or is otherwise related to service.

(c) Please identify any right hip disability by medical diagnosis.

(d) For each right hip disability identified, state whether it is at least as likely as not (50 percent probability or more) that the right hip disability had its onset in service or is otherwise related to service.

(e) Only if a right knee disability is identified and is related to service and a right hip disability is also identified, please state whether it is at least as likely as not (50 percent probability or more) that the Veteran's right knee disability caused the Veteran's right hip disability.

(f) Only if a right knee disability is identified and is related to service and a right hip disability is also identified, please state whether it is at least as likely as not (50 percent probability or more) that the Veteran's right knee disability aggravated the Veteran's right hip disability beyond the natural progression of the disease.

If the clinician finds that the Veteran's right hip has been permanently worsened beyond normal progression (aggravated) by a right knee disability, the clinician should attempt to quantify the degree of aggravation beyond the baseline level of her right hip disability that is attributed to the right knee disability.

In offering any opinion, the clinician should consider medical and lay evidence dated both prior to and since the filing of the claim, including:

* The Veteran's testimony during the December 2016 hearing; and

* The contentions made by the Veteran's representative in an August 2016 statement.

A complete rationale for the opinions rendered must be provided. If the clinician cannot provide the requested opinions without resorting to speculation, he or she should please expressly indicate this and provide a supporting rationale as to why that is so.

5. After completing the requested actions, and any additional action deemed warranted, readjudicate the claims on appeal. If the benefits sought on appeal remain denied, provide a supplemental statement of the case to the Veteran and her representative and afford them an opportunity to respond. Then, return the case to the Board, if in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
S.C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).